# DECLARATION OF JENNIFER REUBEL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MATHYS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE HARTFORD GOLD GROUP, LLC; ) <br> ) <br> DAVID WOLAN, ) <br> ) <br> Defendants. ) | Case No. 20-cv-03927 <br><br> Honorable Charles P. Kocoras |

### DECLARATION OF JENNIFER REUBEL

I, Jennifer Reubel, declare under penalty of perjury as follows:

1. I respectfully submit this declaration in support of Defendants The Hartford Gold Group, LLC's ("HGG") and David Wolan's Motion to Compel Arbitration, and to Dismiss or Stay Proceedings. I have personal and firsthand knowledge of the facts stated in this declaration and if called upon, would competently testify thereto.

2. I have been employed by HGG since September of 2017, and I have been HGG's Vice President Operations since June of 2019.

1

3. Attached hereto as Exhibit A and incorporated by this reference is a true and correct copy of the Shipping and Transaction Agreement Plaintiff John Mathys signed and returned to HGG on December 12, 2018.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this July 27, 2020 at Los Angeles, California.

_____
JENNIFER REUBEL

2

# DECLARATION OF JENNIFER REUBEL

# EXHIBIT A

SHIPPING and TRANSACTION AGREEMENT
THE HARTFORD GOLD GROUP LLC

Client Name: **John Mathys**     Date: **Dec 12, 2018**

Client Address: **2064 W. Pratt Blvd.**    City: **Chicago**    State: **Il.**    Zip Code: **60645**

Phone Number: **6305924267**    Email Address: **jnmathys@sbcglobal.net**

This agreement is entered into as of the above date by and between The Hartford Gold Group LLC, 11900 W. Olympic Blvd. Ste. 750, Los Angeles, California 90064 ("HGG") and you ("Customer"), and shall govern all pending and future precious metals transactions between the parties hereto.

**IT IS IMPORTANT THAT YOU CAREFULLY READ AND FULLY UNDERSTAND THIS AGREEMENT, WHICH GOVERNS THE PARTIES' RIGHTS AND OBLIGATIONS, LIMITS HGG'S LIABILITY, AND THAT YOU CONSULT WITH YOUR ATTORNEY AND/OR FINANCIAL ADVISOR. BY SIGNING THIS AGREEMENT, YOU REPRESENT THAT YOU HAVE READ, UNDERSTAND, AND AGREE TO ALL TERMS HEREIN.**

1.    **CONSENT TO CALL.**

**_JM_**    **Initial of Customer.** By entering into this agreement, Customer expressly authorizes HGG to contact Customer at the telephone numbers provided by the Customer regardless of whether those numbers are listed on any state or federal "Do Not Call" registry.

2.    **DELIVERY OF PRECIOUS METALS.**

A.    Customer shall deliver funds, either by certified bank check payable to "The Hartford Gold Group LLC" or by wire transfer (pursuant to instructions provided upon request), sufficient to cover the purchase price (the "Purchase Funds") within two (2) business days after placement of the order. Except as expressly provided herein, all sales are final, and precious metals cannot be exchanged or returned for a refund. HGG shall arrange delivery of the Precious Metals specified in the order to Customer's address provided above within twenty-eight (28) days after HGG's verification that the Purchase Funds are backed by good funds, which for a bank check may take up to twelve (12) business days. If Customer's order is lost prior to delivery, Customer shall immediately notify HGG in writing at the above address. If the courier verifies that Customer's precious metals were never delivered, HGG shall, within sixty (60) days after such verification, in its sole discretion, either refund to Customer the Purchase Funds for the undelivered precious metals, or replace the undelivered precious metals with other precious metals of the same denomination/type and grade. HGG shall not be responsible for precious metals lost after delivery to Customer, nor does HGG assume any risk of loss for precious metals purchased from Customer until such precious metals are accepted by a representative of HGG authorized to accept such delivery. See Section 11 below for additional information on precious metals shipped to storage facilities.

B.    If Customer fails to timely deliver the Purchase Funds, or does not accept delivery of the precious metals, HGG may, in its sole discretion, cancel the transaction and resell the ordered precious metals on a wholesale basis. If the proceeds from such resale are less than Customer's contract price, HGG shall be entitled to recover from Customer the difference between the contract price and resale price, plus all incidental damages resulting from Customer's breach. If the proceeds from such resale exceed Customer's contract price, HGG shall be entitled to keep the excess amount as liquidated damages because actual damages may be too speculative to calculate at this time.

3.    **SATISFACTION GUARANTEED**

Unless otherwise set forth in the Shipping & Transaction Agreement Addendum provision applicable to your state, The Hartford Gold Group has a satisfaction guarantee. If, upon your receipt of the merchandise, you notify us by mail or email within seven

_JM_

(7) days that you wish to cancel the transaction and receive a refund, upon receipt of the unused and undamaged merchandise The Hartford Gold Group will provide a full refund within thirty (30) days. Notice of cancellation should be delivered via email to: info@hgoldgroup.com. Notice of cancellation should be delivered via mail or telegram to: The Hartford Gold Group, Attn: Customer Service, 11900 W. Olympic Blvd., Ste. 750, Los Angeles, CA 90064. Notices of cancellation will be considered timely if postmarked on the seventh day after you execute this Agreement.

4. **PURCHASE PRICE.**

A. The purchase price Customer agrees to pay includes HGG's profit margin on that transaction. The difference between HGG's actual cost of the precious metals on the day of the Customer's purchase and the retail price quoted to Customer is called the "Spread." This should not be read as a promise to repurchase precious metals (See Section 5 below). The Spread may vary significantly and may be negotiable. The Spread charged to Customer in a particular transaction may be different than the Spread charged to Customer in prior or future transactions, or the Spread charged others in similar transactions. For Customer to make a profit, Customer must be able to sell the precious metals in the future for a price exceeding Customer's initial investment, including the Spread.

B. On the date this agreement was offered to Customer, HGG's Spread on (i) bullion was between two percent and fifteen percent (2-15%); and (ii) semi-numismatic and numismatic coins was between five and thirty five percent (5-35%). The Spread on Hartford exclusive coins is the same as for semi-numismatic and numismatic coins: between five and thirty five percent (5-35%). However, these percentages vary, and the actual Spread on any specific transaction may be outside the stated typical ranges.

C. Individual retirement account ("IRA") transactions cost more to process and may require HGG to assume certain risks. Therefore, HGG's spread on IRA precious metals transactions may be greater than for other transactions, and on the date this agreement was offered to Customer, HGG's Spread was generally between two and thirty five percent (2-35%). These numbers are approximations representing a general range for a typical transaction, and the actual Spread on any particular transaction could potentially be outside that general range, depending upon the circumstances.

D. A precious metal may be classified as bullion, semi-numismatic or numismatic depending upon various objective and subjective factors, including, without limitation: the precious metal's condition and age; the number of known copies; the likelihood of additional minting; the originating country; applicable historical events or owners; and relation to the formation of a precious metal collection. HGG's classification of a precious metal is an expression of its professional opinion only, and may differ over time and/or based upon changed circumstances. Moreover, because classification of precious metals is in part subjective, other dealers' or investors' classification of a particular precious metal may differ from HGG's.

E. HGG's sales representatives are compensated on commission based at least partially on the volume and profit margin of precious metals they sell, and may at times also receive additional compensation tied to sales, such as bonuses, sales contests, etc. HGG's sales representatives are not licensed and their experience with, and knowledge of, precious metals and precious metals markets may vary considerably.

5. **NO GUARANTEED BUYBACK**

Because applicable laws currently prohibit HGG from guaranteeing to repurchase precious metals it sells, HGG makes no such guarantee, either as to actual repurchase or as to repurchase at a particular price. But if at any time Customer wishes to sell Customer's precious metals, HGG encourages Customer to offer to sell them to HGG first. If HGG makes an offer to repurchase precious metals, its offer may increase or decrease at any time, depending upon several factors, including without limitation inventory needs, market conditions and the price and availability of similar precious metals.

*JM*
JM

6. **INVESTMENT OBJECTIVES.**

In HGG's opinion, precious metals should be considered a long-term investment, and accordingly, Customer should be prepared to hold purchased precious metals for several years, preferably five to ten years. However, as with any investment, precious metals may appreciate, depreciate or remain unchanged, and HGG makes no representation or guarantee that Customer's precious metals will or are likely to appreciate, or will not or are not likely to depreciate, at any time, or over any period of time. As a seller and purchaser of precious metals, HGG is capable of comparing and contrasting different precious metals, but Customer acknowledges and irrevocably agrees no fiduciary relationship exists, or may in the future exist, between HGG and Customer, and all decisions in connection with the purchase and sale of precious metals, including, without limitation, the decision whether to purchase or sell precious metals, are Customer's decisions alone, and made exclusively based upon Customer's own independent judgment.

7. **INVESTMENT RISK/NO INVESTMENT, LEGAL, OR TAX ADVICE.**

A. The value of a precious metal on any given day depends in substantial part upon often unpredictable extrinsic economic forces, including without limitation supply and demand, international monetary markets, inflation and general economic conditions and expectations. Customer acknowledges and understands the precious metals market may be volatile, with prices fluctuating, sometimes substantially and unpredictably, and that past performance is no guarantee of future performance.

B. Customer acknowledges HGG does not and will not furnish investment, legal or tax advice, and no HGG representative is authorized to furnish any such advice or services at any time. Any written or oral statements by HGG or any of its representatives relating to precious metals are strictly opinions, and are not, and should never be construed as, statements or representations of fact, nor should they be relied upon by Customer or anyone acting on Customer's behalf. HGG makes no representations regarding the tax consequences of holding precious metals as an investment in an IRA, and Customer acknowledges HGG has advised Customer to seek independent tax advice from a qualified professional regarding such tax consequences. Finally, HGG does not provide advice on the purchasing, selling, or holding of securities. The Customer should seek independent investment advice from a qualified investment adviser regarding securities.

8. **NO REPRESENTATIONS OR WARRANTIES.**

Other than as expressly stated in this paragraph 8, neither HGG nor its representatives are authorized to make, have made, or will make any representations or warranties upon which Customer may rely in connection with purchasing precious metals from HGG or anyone else, or selling precious metals to HGG or anyone else. HGG represents and warrants that, subject to all terms and conditions herein, upon the timely delivery of Purchase Funds as set forth in paragraph 2 above, HGG will cause to be delivered to Customer the denomination/type and grade of precious metals specified in Customer's order, as classified or graded by one of the following independent grading services, or a service of similar recognition and standing in the grading .industry: Professional Coin Grading Service, Inc.; Numismatic Guaranty Corporation of America; American Numismatic Association Certification Service (ANACS).

**EXCEPT AS EXPRESSLY STATED IN THIS PARAGRAPH 8 AND THE ATTACHED SHIPPING AND TRANSACTION AGREEMENT ADDENDUM, THE PRECIOUS METALS HGG SELLS HEREUNDER ARE SOLD "AS IS" AND HGG HAS NEITHER MADE, NOR WILL MAKE, ANY WARRANTIES, EXPRESS OR IMPLIED, AND EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. CUSTOMER ACKNOWLEDGES AND UNDERSTANDS THE PRECIOUS METALS SUBJECT HERETO MAY BE PURCHASED FROM AND SOLD TO HGG'S COMPETITORS AND CUSTOMER HAS THE OPTION OF DOING BUSINESS WITH SUCH HGG COMPETITORS.**

9. **GRADING.**

HGG is not a grading service and thus does not independently grade or assess the precious metals it purchases for resale to its customers, but rather relies upon the opinions, assessments and grading of independent grading services such as those listed in paragraph 8.

10. **NO LIABILITY FOR CONSEQUENTIAL DAMAGES.**

IN NO EVENT AND UNDER NO CIRCUMSTANCES SHALL HGG HAVE ANY OBLIGATION OR LIABILITY, WHETHER IN CONTRACT, TORT OR OTHERWISE, AND NOTWITHSTANDING ANY NEGLIGENCE, FAULT OR STRICT LIABILITY, FOR ANY INDIRECT, INCIDENTAL, ECONOMIC, NON- ECONOMIC, OR CONSEQUENTIAL DAMAGES SUSTAINED, RELATING TO, OR ARISING FROM ANY TRANSACTION HEREUNDER, EVEN IF HGG IS GIVEN NOTICE OF THE POSSIBILITY OF SUCH DAMAGES. HGG'S LIABILITY TO CUSTOMER UPON ANY CLAIMS AND FOR ANY REASON SHALL AT ALL TIMES BE LIMITED SOLELY TO THE AMOUNT CUSTOMER ACTUALLY PAID FOR THE PRECIOUS METALS AT ISSUE. THIS LIMITATION OF LIABILITY IS A MATERIAL TERM HEREOF, WITHOUT WHICH HGG WOULD NOT ENTER INTO THIS AGREEMENT OR ANY TRANSACTION WITH CUSTOMER.

11. **STORAGE.**

HGG may, for Customer's convenience, suggest companies that provide depository storage of precious metals. HGG expressly disclaims any and all responsibility for any losses Customer may incur arising from or relating to any relationship between Customer and any storage company, and Customer is solely responsible for selecting a storage company and any related transactions involving such company. However, if for any reason HGG is unable to deliver your precious metals to the customer-designated storage company within twenty-eight (28) days, HGG reserves the right to nullify and cancel the transaction and will refund the full purchase price of the precious metals consistent with paragraph 3 above.

12. **DISPUTE RESOLUTION.**

After the initial purchase or exchange process, the Customer should review all invoices in order to verify whether any transactions were not consistent with the Customer's instructions. The Customer acknowledges that its failure to notify HGG of any such problem in writing promptly after the Customer's receipt of the information can substantially impair HGG's ability to take corrective action or minimize any problem.

Any dispute, claim, or controversy arising out of this Agreement or otherwise between HGG and the Customer, including but not limited to the breach, termination, enforcement, interpretation, or validity of this Agreement and the scope and applicability of the agreement to arbitrate contained in this paragraph, shall be determined by arbitration before the Judicial Arbitration and Mediation Service ("JAMS") office closest to the Customer's principal place of residence before one arbitrator who shall be a retired judicial officer. Any claim asserted by the Customer will not be joined, for any purpose, with the claim or claims of any other person or entity. The arbitration shall be administered by JAMS pursuant to the rules promulgated by JAMS. The laws of the state of the residence of the Customer shall govern the substantive rights of the parties. The arbitration shall be final and binding, and judgment on the award may be entered in any court having jurisdiction. Customer understands that by agreeing to arbitration, the Customer is waiving all rights to seek remedies in court, unless otherwise mandated by federal or state laws. This clause will not prohibit the parties from seeking the provisional remedies in any court of competent jurisdiction. ANY CLAIM OR LEGAL PROCEEDING HEREUNDER SHALL BE FILED WITHIN ONE YEAR OF ITS ACCRUAL. BY AGREEING TO ARBITRATE ANY CLAIM OR DISPUTE PURSUANT TO THIS PARAGRAPH 12, THE PARTIES WAIVE ANY RIGHTS THEY MAY OTHERWISE HAVE TO A COURT OR JURY TRIAL. This paragraph shall survive termination of this Agreement.

*JM*
JM

13. **FORCE MAJEURE.**

Neither HGG nor Customer shall be liable for any failure or delay in performance of any obligation hereunder due to any cause beyond their reasonable control, including without limitation acts or war, terrorism, acts of God, riots, embargos, sabotage, labor dispute, governmental acts, or technical failure (including any disruption, failure and/or error in HGG's computer systems or internet service).

14. **SEVERABILITY and INTEGRATION.**

In the event any term, condition or provision of this agreement is found void, voidable or unenforceable for any reason by a tribunal of competent jurisdiction, such term, condition or provision shall, if and to the extent possible, be construed as though more narrowly drafted to make it enforceable, or if that is not possible, shall be deemed severed from the remainder of this agreement and all other terms, conditions and provisions hereof shall remain in full force and effect. The parties intend this to be a fully integrated agreement, and each party acknowledges neither party has made or relied upon any representation or promise not expressly embodied herein. Customer acknowledges and agrees HGG may amend this agreement at any time solely by written notice to Customer from an authorized representative of HGG, and all transactions postdating such written notice shall be exclusively governed by such amended Transaction Agreement. Customer may not unilaterally amend or modify this agreement, and no oral amendment or modification of this agreement shall be valid or enforceable.

By signing below, Customer represents and warrants Customer has carefully read, understands and agrees to all the terms and conditions of this agreement. You are not obligated to pay any money unless you sign this confirmation and return it to The Hartford Gold Group.

By (signature): *John Mathys* (John Mathys (Dec 12, 2018))  Date: Dec 12, 2018

Print name: John Mathys  Date: Dec 12, 2018

5