UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MATHYS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE HARTFORD GOLD GROUP, LLC ) <br> d/b/a AMERICAN HARTFORD GOLD ) <br> GROUP and DAVID WOLAN, ) <br> ) <br> Defendants. ) | 20 C 3927 |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Hartford Gold Group, LLC ("HGG") and David Wolan's ("Wolan") (collectively, "Defendants") motion to compel arbitration. For the following reasons, the Court grants Defendants' motion.

## BACKGROUND

The following facts are taken from the record and are undisputed unless otherwise noted.

Plaintiff Mathys is an eighty-three-year-old resident of Chicago, Illinois. Mathys is currently retired and was a professor at a private university in Chicago. HGG is a California limited liability company with a principal place of business in Los Angeles, California. HGG sells precious metals, primarily gold and silver. Defendant Wolan is a resident and citizen of California. He is a Senior Director of HGG.

On December 11, 2018 Mathys invested $35,000 with HGG to purchase gold and silver assets. The assets were held with International Depository Services of Delaware ("IDS"). Prior to investing in gold and silver assets, Mathys kept his savings in three accounts—a traditional individual retirement account ("IRA"), a Roth IRA, and a non-retirement account.

Mathys alleges that HGG "commenced an aggressive marketing campaign" to solicit additional funds from him in 2019. This included both emails and phone calls. Mathys alleges that several of communications "sounded the alarm" of a possible collapse of the economy and that the government might seize bank assets. Mathys alleges that HGG encouraged him to make investments in gold and silver in order to protect his assets. Additionally, Mathys alleges that Wolan called him and encouraged him to liquidate his IRA and Roth IRA and invest those assets with HGG.

Mathys ended up making three additional investments with HGG in October 2019. Mathys's first investment was for $211,739.00, the second was for $71,406.63, and the third was for $286,186.20. Mathys alleges that the values of the coins he purchased from HGG were false. He says that the actual values of the coins were less than half what HGG said they were worth.

Mathys signed identical Shipping and Transactions Agreements ("STAs") on December 12, 2018, and October 29, 2019. The STAs contain an arbitration provision which states:

> Any dispute, claim, or controversy arising out of this Agreement or otherwise between HGG and the Customer, including but not limited to the breach, termination, enforcement, interpretation, or validity of this Agreement and the scope and applicability of the agreement to arbitrate contained in this paragraph, shall be determined by arbitration before the Judicial Arbitration and Mediation Service ('JAMS') office closest to Customer's principal place of residence before one arbitrator who shall be a retired judicial officer. Any claim asserted by the Customer will not be joined, for any purpose, with the claim or claims of any other person or entity. The arbitration shall be administered by JAMS pursuant to the rules promulgated by JAMS. The laws of the state of the residence of the Customer shall govern the substantive rights of the parties. The arbitration shall be final and binding, and judgment on the award may be entered in any court having jurisdiction. Customer understands that by agreeing to arbitration, the Customer is waiving all rights to seek remedies in court, unless otherwise mandated by federal or state laws. This clause will not prohibit the parties from seeking the provisional remedies in any court of competent jurisdiction. **ANY CLAIM OR LEGAL PROCEEDING HEREUNDER SHALL BE FILED WITHIN ONE YEAR OF ITS ACCRUAL. BY AGREEING TO ARBITRATE ANY CLAIM OR DISPUTE PURSUANT TO THIS PARAGRAPH 12, THE PARTIES WAIVE ANY RIGHTS THEY MAY OTHERWISE HAVE TO A COURT OR JURY TRIAL.** This paragraph shall survive termination of this Agreement.

1:20-cv-3927, Dkt. # 11, Ex. N (emphasis in original).

Based on these facts, Mathys filed a ten count First Amended Complaint on August 3, 2020. Mathys alleges breach of contract, fraud, misrepresentation, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 et seq., and seeks declaratory judgment that the arbitration provisions are inapplicable and unconscionable. Defendants moved to compel arbitration on August 10, 2020.

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration clauses in state and federal courts. *Jain v. de Méré*, 51 F.3d 686, 688 (7th Cir. 1995). Under the FAA, an arbitration agreement in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Court must grant a motion to compel arbitration under the FAA where the parties have a written arbitration agreement and the asserted claims are within its scope. 9 U.S.C. §§ 3-4; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). In deciding a motion to compel arbitration, the Court's duty is to determine whether the parties' dispute belongs in arbitration, not to rule on the potential merits of the underlying claim. *AT&T Techs., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986).

If a court "determines that the making of the arbitration agreement is seriously disputed, 'the court shall proceed summarily to the trial thereof.'" *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (quoting 9 U.S.C. § 4). "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Id.* Although the "the FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet," the Seventh Circuit has "analogized the standard to that required of a party opposing summary judgment under Rule 56(e)." *Id.*

4

**DISCUSSION**

Defendants argue that Mathys's claims should be submitted to arbitration due to the mandatory arbitration agreements in the STAs, which include delegation clauses requiring the arbitrator to determine the scope and applicability of the arbitration agreements. Mathys first argues that Wolan cannot invoke the arbitration agreements because he is not a party to the STAs. Second, Mathys argues that the delegation clauses are procedurally and substantively unconscionable. Third, Mathys argues that the issues here fall outside the scope of the arbitration agreement. We address each of Mathys's arguments in turn.

## I. Wolan's Ability to Invoke Arbitration Agreements

Mathys first argues that Wolan cannot invoke the arbitration clauses because he was not a party to the STAs. We disagree.

"[T]here are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Mathys's argument focuses on the second doctrine—agency. "Under traditional agency theory, because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Denari v. Rist*, 2011 WL 332543, *9 (N.D. Ill. 2011) (quoting *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3rd Cir.1993)) (cleaned up).

5

The Seventh Circuit has held that a customer must arbitrate claims against both a company and its employees, even if the employees are not express parties to the arbitration agreement. *Dunmire v. Schneider*, 481 F.3d 465, 467 (7th Cir. 2007). In *Dumnire*, the plaintiff argued that the arbitration agreement did not mention the employees of the company, Morgan Stanley, and therefore he did not have to arbitrate his claims against the employees. *Id.* The Seventh Circuit disagreed, saying that "courts regularly treat employees as third-party beneficiaries of arbitration clauses . . ." *Id.* (collecting cases). Additionally, the Seventh Circuit noted that "[i]t would make little sense for a customer to arbitrate Morgan Stanley's liability while simultaneously litigating with the employees" because the employees "dealt with [the plaintiff] on behalf of a disclosed principal." *Id.* Therefore, the Seventh Circuit concluded that the arbitration clause applied to the Morgan Stanley employees and that the customer must arbitrate his claims against both the company and its employees. *Id.*

Here, it is undisputed that Wolan was an employee of HGG at the time the STAs were signed. Wolan communicated with Mathys using official HGG letterheads with the intent to sell HGG's products to Mathys. Mathys's claims are that HGG, through Wolan, mislead him into purchasing precious metals. Thus, HGG's liability is dependent on Wolan's actions and it would make little sense for Mathys to arbitrate with HGG while simultaneously litigating with Wolan. Accordingly, Wolan may invoke the arbitration agreement.

6

**II.    Unconscionability**

Mathys argues that the arbitration agreements and delegation clauses are both procedurally and substantively unconscionable. We address each in turn.

**a. Procedural Unconscionability**

Mathys argues that the arbitration agreements are procedurally unconscionable because they were written in small font, he did not discuss the documents with a lawyer, and he lacked capacity to assent to the arbitration clauses. We disagree.

"Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of meaningful choice." *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011) (cleaned up). This can occur when "a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229, 237 (1st Dist. 2008). Factors to be considered "include whether each party had the opportunity to understand the terms of the contract, whether important terms were 'hidden in a maze of fine print,' and all of the circumstances surrounding the formation of the contract." *Phoenix Ins. Co.*, 242 Ill. 2d at 60.

Mathys first argues that the arbitration agreements were in small, single spaced font. However, the arbitration agreements are the same size and font as the rest of the provisions of the STAs. In fact, parts of the arbitration agreements were bolded and in all capitals in order to call attention to it. Mathys also initialed the bottom of the page just below the arbitration agreement indicating that he had read and agreed to the terms

7

on that page. Thus, the arbitration clauses were not so inconspicuous as to make the arbitration clauses procedurally unconscionable. *See Bess*, 381 Ill. App 3d at 240 (no procedural unconscionability where portions of the arbitration clause were bolded).

Next, Mathys argues that the arbitration agreements are unconscionable because he did not consult with an attorney before signing the STAs. However, Mathys had opportunity to consult with counsel and he chose not to. HGG recommended that he consult with counsel and gave him opportunity to do so. This was even in bold type at the very beginning of STAs. Despite this, Mathys chose not to consult with his attorney. Therefore, Mathys failing to consult with his attorney under these circumstances does not make the arbitration clauses procedurally unconscionable.

Lastly, Mathys argues that the arbitration agreements are unconscionable because he lacked capacity to enter into the agreements. Mathys argues that he lacked capacity to enter into only to the arbitration agreements and not to the STAs as a whole. In fact, his breach of contract claim relies on the existence of a valid and enforceable contract. However, "a mental capacity challenge can logically be directed only at the entire contract." *Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003). The arbitrator must decide this issue as the arbitration agreements expressly state that the arbitrator must determine the validity of the contracts and arbitration agreements. Accordingly, Mathys's procedural unconscionability arguments fail.

### b. Substantive Unconscionability

Mathys argues that the delegation clauses are substantively unconscionable because he cannot afford to pay the costs of arbitration.[1] We disagree.

"Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor." *Crown Mortg. Co. v. Young*, 2013 IL App (1st) 122363, ¶ 7. "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 755 (N.D. Ill. 2015).

JAMS rules allow the parties to agree on an allocation of fees and expenses different from the allocation set forth by JAMS rules. JAMS R. 31(a). HGG has offered to attempt reach an agreement to make the arbitration process more affordable to Mathys. The Court sees no reason to believe this offer is not made in good faith. Additionally, there is no evidence that JAMS would go far as to rule that the dispute is within the scope of the arbitration agreements solely to receive fee payments, as Mathys asserts. Accordingly, Mathys's substantive unconscionability argument fails. *See Bess*, 381 Ill. App. 3d at 244 (finding that arbitration was not cost-prohibitive and therefore

---

[1] Mathys moves to strike HGG's argument involving the price of the home in which he lives. HGG argued that the value of Mathys's home proves that he can afford arbitration. In support of that argument, HGG provided a screenshot of a Zillow.com listing for the address where Mathys lives. We grant Mathys's motion as the information may be misleading and the evidence shows that Mathys does not even own the home.

the arbitration clause was not substantively unconscionable); *see also Davis v. Fenton*, 26 F. Supp. 3d 727, 739 (N.D. Ill. 2014) (similar).

The STAs clearly and unmistakably require that the arbitrator determine the validity of the contracts and the scope and applicability of the arbitration agreements. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (arbitrator must decide the issue of arbitrability if the parties clearly and unmistakably agreed to do so); *Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 576 (7th Cir. 2006) (similar). Accordingly, HGG's motion to compel arbitration is granted.

## CONCLUSION

For the reasons mentioned above, the Court grants Defendants' motion to compel arbitration (Dkt. # 13). Mathys is ordered to proceed with his claims in arbitration. Additionally, Mathys's motion to strike is granted (Dkt. # 19). Any remaining pending motions are denied as moot. Civil case terminated. It is so ordered.

Dated: 12/07/2020

_____
Charles P. Kocoras
United States District Judge